Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing of this matter as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer/employee relationship existed between the named employer and the named employee.
3. The carrier liable on the risk is correctly named.
4. The medical records presented by plaintiffs counsel at the hearing have subsequently, after review by the defendants, been stipulated into evidence.
 ***********
Based upon all of the competent evidence of record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old.
2. Prior to working for Piedmont Pathology, plaintiff worked as a clerk for a furniture company and a clerk for Western Electric.
3. Plaintiff was employed with the Mingo County Health Department in West Virginia for 11 years. Plaintiffs primary duties were as a transcriptionist, and occasionally she provided physicals for restaurant workers. While at Mingo County Health Department, plaintiff was not exposed to any blood or tissue samples.
4. Plaintiff worked for Valdese Hospital as a transcriptionist for approximately six weeks. Following her employment with Valdese Hospital, plaintiff worked as a transcriptionist in the pathology lab at Grace Hospital. Plaintiff was not exposed to blood or tissue samples in either employment.
5. Plaintiff began her employment as a transcriptionist with defendant-employer in October 1990. In February 1991, plaintiff began training as a part-time assistant histologist, and in March 1991 she began performing her new duties. Mr. Bill Myer was responsible for training plaintiff as an assistant histologist. As an assistant histologist, plaintiff was responsible for using a microtome to cut processed, wax-based tissue that was to be eventually placed on a slide for microscopic examination.
6. The tissue samples that plaintiff handled at Piedmont Pathology arrived in a vial which contained 10% buffered formalin. Plaintiff testified that at times prior to the samples arrival at the lab, the formalin solution leaked out into the larger container containing the vials; there is no evidence that plaintiff had any unprotected direct contact with these tissue samples, or that she might have been infected by one. Plaintiff was never involved with "grossing, that is receiving and evaluating the samples, or in the preliminary processing of the samples which involves cutting or taking representative samples and placing that tissue into an assigned cassette in which it is processed.
7. The tissue samples plaintiff handled had been processed with a machine which used steps to fix, dehydrate, clear and infiltrate tissue specimens in an enclosed system. Processing the samples involves the following steps: The tissue is fixed in 10% buffered formalin at 40 degrees Celsius for 20 minutes. It rests in 10% formalin at 40 degrees Celsius for 40 minutes, then in 70% alcohol at a temperature of 40 degrees Celsius for 20 minutes, then in 80% alcohol at a temperature of 40 degrees Celsius for 20 minutes. The tissue is then placed in 100% alcohol for a period of 80 minutes, then bathed with xylene for 50 minutes. Thereafter, the tissue is processed with paraffin at a temperature of 60 degrees Celsius for 45 minutes, then again processed with paraffin for an additional hour at a temperature of 60 degrees Celsius. During the processing, tissue is soaked in varying degrees and strengths of formalin, xylene and alcohol in order to decontaminate and dehydrate the tissue. All of these materials kill the Hepatitis-C virus. Accordingly, there is no active virus in a tissue sample following this processing.
8. When plaintiff received the tissue sample after it had been processed, she embedded the tissue in paraffin wax by placing the tissue into a metal mold which was filled with paraffin from a dispenser. Plaintiff then placed the cassette on a cold plate and once it was chilled, plaintiff took the cassette out of the mold, forming a paraffin block, with the tissue embedded inside the paraffin block.
9. Plaintiffs next duty was to place the paraffin block on an AOA20 microtome, a machine which cut extremely thin slices of the paraffin block with the tissue inside it to eventually be placed on a slide for microscopic examination.
10. The processing of tissue at Piedmont Pathology lasted approximately eight hours. The Hepatitis-C virus has a half life of three and one-half hours after leaving the body.
11. Plaintiff never engaged in any direct contact with unprocessed tissue while employed at Piedmont Pathology. The only parties responsible for dealing with unprocessed tissue were Mr. Bill Myer and the doctors in the lab.
12. On 21 March 1991, plaintiff cut her finger on the microtome machine as she reached to remove the processed, wax based tissue from the blade of the microtome. There is no evidence that plaintiff was exposed to any tissue containing live Hepatitis-C virus at Piedmont Pathology or when she cut her finger on the microtome machine.
13. Plaintiff was terminated on 21 October 1997, for reasons unrelated to her disability.
14. On 8 April 1998, plaintiff was diagnosed with Hepatitis-C by Dr. Robert Reindollar, a specialist in gastrointestinal and liver diseases, and an expert regarding the Hepatitis-C virus.
15. Dr. Reindollar provided expert testimony. He was of the opinion that the primary means of contracting Hepatitis-C is through blood to infected blood or fluid contact. IV drug use, tattooing, and transfusions account for the majority of cases. Needle sticks result in approximately 3% of the cases, and sexual contact nearly 0%. Further, the virus can have a latency period in the body of 25 to 30 years before symptoms begin to manifest.
16. Plaintiffs cut to her finger on 21 March 1991 did not provide an opportunity for plaintiff to come into contact with infected blood. Plaintiff was handling processed tissue at the time of the cut. Based upon the expert testimony that tissue which has been processed in the manner described above does not contain active viruses, there is no evidence of plaintiffs exposure to the Hepatitis-C virus at that time.
17. There is insufficient evidence to prove that plaintiff was exposed to or contracted the Hepatitis-C virus while employed by defendant-employer. Based upon the medical evidence and other testimony, the Full Commission finds that plaintiffs job duties at Piedmont Pathology did not place her at an increased risk of contracting Hepatitis-C as compared to members of the general public.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. For an occupational disease to be compensable under the North Carolina Workers Compensation Act, it must be proven that the disease was due to causes and conditions which are characteristic of and peculiar to a particular trade or occupation. Furthermore, the plaintiff seeking to recover for an occupational disease must prove that her employment places her at an increased risk as compared to members of the general public of contracting Hepatitis-C. Plaintiff has failed to meet her burden to prove that she contracted Hepatitis-C as a result of her employment with defendant-employer or that her job duties placed her at an increased risk of contracting Hepatitis-C over the general public not so employed. N.C. Gen. Stat. 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The employee-plaintiffs claim is and under law must be DENIED.
2. Plaintiff is entitled to recover nothing from the defendants.
3. Each side shall pay its own costs, except the defendants shall pay an expert witness fee of $400.00 to Dr. Robert Reindollar.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER